DECISION
{¶ 1} In this original action, relator, Michelle L. Smith, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying temporary total disability ("TTD") compensation based upon a finding that relator voluntarily abandoned her employment, and to enter an order granting her the requested TTD compensation. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion in denying her request for TTD compensation and, therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed the following objection to the magistrate's decision:
 The Magistrate erroneously concluded the Commission adequately explained its reasoning in its order by making assumptions as to what the Commission found and by providing an explanation of the Commission's reasoning that is not contained in, or supported by, the actual language of the Commission order.
 {¶ 4} Upon review and for the reasons set forth in the magistrate's decision, we do not find relator's position to be well-taken. Though relator argues the commission failed to explain its order, as the magistrate explained, relator was terminated for having at least five unscheduled absences in a 12-month rolling calendar period. The magistrate listed the dates of the unscheduled absences and accounted for the medical evidence submitted by relator that related to some of those absences. After review, the magistrate noted the employer's records did indeed indicate five unscheduled absences, and as such the employer met its burden under State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401. We find no error in the magistrate's conclusion that the commission did not abuse its discretion in finding that the employer presented evidence to support a finding of voluntary abandonment. *Page 3 
 {¶ 5} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objection to the magistrate's decision is overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Writ denied.
 BRYANT and PETREE, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on July 30, 2007 IN MANDAMUS {¶ 6} Relator, Michelle L. Smith, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total disability ("TTD") compensation based upon a finding that relator had voluntarily *Page 5 
abandoned her employment and ordering the commission to issue an order granting her the requested TTD compensation.
Findings of Fact: {¶ 7} 1. Relator sustained a work-related injury on February 15, 2006 when she caught a patient who was falling in the shower. Relator's claim was originally allowed for "thoraco lumbar sprain" and later referred to as "thoracic sprain; lumbar sprain."
 {¶ 8} 2. Relator began treating with Alton J. Ball, M.D., on February 27, 2006. In his progress note of the same date, Dr. Ball indicated that relator could return to work on that date, February 27, 2006, or her next shift with restrictions, including no lifting over 20 pounds and very limited bending/twisting. Dr. Ball did note that relator had missed work on February 26, 2006.
 {¶ 9} 3. Relator continued to see Dr. Ball on a regular basis. In all of his progress notes, Dr. Ball indicated that relator could return to work with restrictions of no lifting over 20 pounds and very limited bending/twisting. In his progress notes dated March 16 and 20, 2006, Dr. Ball indicated that relator was having problems working the night shift then going directly to physical therapy. Relator informed him that she felt exhausted and had been unable to perform her home exercises. Dr. Ball recommended that relator see if she could work the day or evening shift so that her physical therapy would be more effective.
 {¶ 10} 4. On March 21, 2006, relator presented at Mount Carmel East Hospital ("Mount Carmel") complaining of back pain. Relator indicated that her back pain began feeling worse the preceding evening at work. Relator was sent home with instructions and a work excuse for two days. *Page 6 
 {¶ 11} 5. Relator saw Dr. Ball on March 23, 2006. In his progress note, Dr. Ball noted that relator's employer, Shalom House Inc., was unable to accommodate a day or evening shift. He indicated further:
 * * * I would like to try at least 1 week of no work and attempt to do physical therapy. This no work would be a no night shift work. If they are unable to accommodate her during days or evenings then I am recommending that she not work. * * * She will continue physical therapy, recheck 1 week and continue ibuprofen.
 {¶ 12} 6. Relator filed a C-84 requesting TTD compensation from March 23, 2006 to an estimated return-to-work date of April 7, 2006.
 {¶ 13} 7. In his March 31, 2006 progress note, Dr. Ball indicated that relator was feeling better, her upper back pain was gone and her lower back pain was much improved. He continued the same instructions, indicated that relator could return to work on March 31, 2006, provided that she work day shift or evening shifts only.
 {¶ 14} 8. Relator saw Dr. Ball again on April 10, 2006. In his progress note, Dr. Ball indicated that relator had moved on April 6, 2006, and had exacerbated her lower back pain symptoms. He indicated that, up until that time, relator had been feeling 90 percent better. Dr. Ball continued the same restrictions including no lifting over 20 pounds and very limited bending/twisting. He also noted that relator had missed work on April 8 and 9, 2006, and that she needed a release to return to work.
 {¶ 15} 9. In the meantime, relator's claim was heard before a district hearing officer ("DHO") on May 10, 2006, and was allowed. Relator's request for TTD compensation was also adjudicated and the DHO determined that relator be paid TTD compensation for the closed period of March 23 through April 10, 2006, based upon Dr. *Page 7 
Ball's progress notes, emergency room report from Mount Carmel, and relator's testimony.
 {¶ 16} 10. Dr. Ball also signed another C-84 certifying relator as disabled from April 7, 2006 through an estimated return-to-work date of April 25, 2006.
 {¶ 17} 11. In his April 27, 2006 progress note, Dr. Ball indicated that relator's thoracic pain had resolved but that she continued to have regional low back pain. Because of her persistent symptoms, Dr. Ball indicated that he was going to request 12 visits of chiropractic manipulation therapy.
 {¶ 18} 12. In his May 12, 2006 progress note, Dr. Ball indicated that relator's claim had been contested and she had not been able to pursue chiropractic treatment. He noted further that she continued working light duty, her regional back pain persisted, primarily on the left side, and she was unable to do her home exercises because she was too tired after work.
 {¶ 19} 13. The record contains certain documents referencing unscheduled absences. The first is a notice of unscheduled absences dated April 19, 2006. That form provides, in relevant part:
 * * * [W]ith your most recent unscheduled absence on 4-8-06 you now have 5 unscheduled absences.
 The following is a list of unscheduled absences during the past 365 days.
 1st Occurrence Date 5-19-20-21-05
 * * *
 3rd Occurrence Date 7-31-05
 Final Occurrence 2-26-06
 * * * *Page 8 
 Additional Occurrences 3-21-22-06 4-8-06
 {¶ 20} At the bottom of the form, the following notation was made: "Please note, that if from the time of this absence you have submitted a doctor's excuse, the HR department will correct you[r] attendance record."
 {¶ 21} 14. The second form is labeled "Associate Discipline Conference" dated May 15, 2006. On that form, it was indicated that relator had violated the following rules of conduct:
 * * * Attendance policy — Pg 18 of the WHV associate handbook. Having 5 unscheduled absences + Rule of Conduct IId Failure to consistently act in a kind, courteous, che[e]rful + considerate manner toward her supervisor + IVh Maliciously interfering with associates during work hours.
 {¶ 22} With regards to the unscheduled absences, the following was noted:
 Michelle was absent (5-19 + 5-21), 7-31-05, 2-26-06, 4-8-06, 5-1-06 + 5-4-06, which equals six unscheduled absences without a doctor's excuse. She was due to be terminated at 5. In addition, Michelle has been absent a total of 14 days in the past year.
 {¶ 23} This form indicated that relator would be terminated.
 {¶ 24} 15. Relator saw Dr. Ball again on June 13, 2006. At that time, he noted that relator had been fired due to attendance issues. He also indicated that he was going to request an MRI. Dr. Ball also completed a C-84 indicating that relator was temporarily and totally disabled from May 12, 2006 through an estimated return-to-work date of July 12, 2006.
 {¶ 25} 16. Relator's request for TTD compensation was heard before the Ohio Bureau of Workers' Compensation ("BWC") and was granted based upon the June 13, 2006 C-84. *Page 9 
 {¶ 26} 17. Relator's employer appealed and the matter was heard before a DHO on June 30, 2006. The DHO denied relator's request for TTD compensation beginning May 12, 2006, on grounds that the medical evidence in the file did not support that she was unable to return to her former job due to the allowed conditions. Based upon relator's testimony, the DHO concluded that Dr. Ball's work restrictions did not prevent relator from performing her work duties. The employer had argued that relator had voluntarily abandoned her employment. On this issue, the DHO found:
 The District Hearing Officer notes that the employer argues that the injured worker voluntarily abandoned her employment when she was terminated for excessive absenteeism pursuant to the employee handbook. The District Hearing Officer rejects this argument because the termination was for accumulated unscheduled absences over a one year period. There is no allegation that the injured worker did not call in or engage in other conduct which would evince an intent to abandon the work force. The injured worker was merely unlucky enough to be sick or injured often enough for her absenteeism to be considered excessive in the eyes of the employer. She did not engage in clearly defined prohibited conduct.
 The District Hearing Officer further notes that the employer did not terminate the injured worker until her 6th unscheduled absence, one more that the number defined for termination. Under this circumstances [sic], the District Hearing Officer cannot determine whether the policy was being selectively enforced.
 {¶ 27} 18. The employer had provided a copy of a page from the associate handbook indicating as follows with regards to its absenteeism policy:
 The quality of services we are able to provide to the senior and disabled members of our community depends on the presence of a strong team on a daily basis. We therefore, maintain an aggressive system of notifying individuals of unscheduled absences and WHV will discharge any associate who has 5 unscheduled absences in any twelve (12) month rolling calendar period. * * * Notices and discharge *Page 10 
actions' regarding an unscheduled absence is as follows: The 3rd unscheduled absence will result in a written notice. The 4th unscheduled absence will result in a notice of Final Warning and the 5th unscheduled absence will result in termination of employment.
(Emphasis sic.) {¶ 28} 19. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on October 27, 2006. The SHO vacated the prior DHO order and denied relator's request for TTD compensation after finding that she voluntarily abandoned her employment. The SHO stated:
 The request for payment of temporary total compensation from 05/12/2006 to the present is denied for alternative reasons. The Staff Hearing Officer finds that the injured worker was terminated as of 05/12/2006 on 05/15/2006 for violation of a written work rule, having at least 5 unscheduled absences in the proceeding 12 months, which rule was known to her. Therefore, pursuant to the rule of [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401], temporary total compensation is not payable as she is deemed to have voluntarily abandoned her former job. The Staff Hearing Officer relies on the employee policy guidelines already on file, and the discipline conference memo which supported the termination, dated 05/15/2006, in making this determination.
 {¶ 29} Thereafter, the SHO stated as follows:
 The Staff Hearing Officer also finds that otherwise the injured worker would he [she] been eligible for temporary total compensation over this period based on the medical evidence, office notes and the C-84's from Dr. Ball, and the injured worker testimony at hearing, that prior to 05/12/2006 she was working under restriction as a result of the 02/15/2006 injury.
 {¶ 30} 20. Relator's further appeal was refused by order of the commission mailed November 17, 2006. *Page 11 
 {¶ 31} 21. Thereafter, the question of overpayment of TTD compensation was heard before an SHO on December 1, 2006. The SHO determined that relator had been overpaid TTD compensation from May 12 through August 14, 2006.
 {¶ 32} 22. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 34} Although relator makes three arguments in this mandamus action, relator really presents only two issues. First, relator contends that three of the unscheduled absences cited by the employer should not be counted against her because she presented medical evidence that her doctor and/or Mount Carmel had taken her off work for those days. Second, relator contends that the employer's asserted reasons for *Page 12 
terminating her were pretext. Relator contends the commission abused its discretion by failing to address this issue and find in her favor.
 {¶ 35} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. Where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to their former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own actions, rather than the injury, that precludes return to the former position of employment. State ex rel. Jones Laughlin Steel Corp. v. Indus.Comm. (1985), 29 Ohio App.3d 145. When demonstrating whether an injury qualifies for TTD compensation, a two-part test is used. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent claimant from returning to his or her former position of employment. State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of TTD compensation. State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44. As such, voluntary abandonment of a former position of employment can, in some instances, bar eligibility for TTD compensation.
 {¶ 36} A firing can constitute a voluntary abandonment of the former position of employment when the firing is a consequence of behavior which the claimant willingly undertook. State ex rel. Watts v.Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118. The rationale for this is that a person is deemed to tacitly accept the consequences of their voluntary acts. *Page 13 
 {¶ 37} In the present case, the commission relied upon State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, and concluded that relator voluntarily abandoned her employment with the employer and is not entitled to TTD compensation. Relator contends, in part, that the employer did not actually identify five unexcused absences. As such, the remainder of relator's argument focuses on her contention that the employer's reasons for terminating her were simply an excuse not to have to pay compensation. In response, both the employer and the commission argue that the employer did identify at least five instances of unscheduled absences and further that relator did not argue pretext before the commission and cannot make that argument now.
 {¶ 38} In Louisiana-Pacific, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 39} In the present case, the employer submitted its handbook which set forth the following absenteeism policy:
 The quality of services we are able to provide to the senior and disabled members of our community depends on the presence of a strong team on a daily basis. We therefore, maintain an aggressive system of notifying individuals of unscheduled absences and WHV will discharge any associate who has 5 unscheduled absences in any twelve (12) month rolling calendar period. * * * Notices and discharge actions' regarding an unscheduled absence is as follows: The 3rd unscheduled absence will result in a written notice. The 4th unscheduled absence will result in a notice of Final Warning and the 5th unscheduled absence will result in termination of employment. *Page 14 
(Emphasis sic.)
 {¶ 40} The above policy is quite specific. Any employee with five unscheduled absences in any 12-month rolling calendar period will be discharged from employment. However, the magistrate notes that on the employer's notice of unscheduled absence form, the following relevant notation is made: "Please note, that if from the time of this absence you have submitted a doctor's excuse, the HR department will correct you[r] attendance record."
 {¶ 41} The employer identified the following unscheduled absences on the May 15, 2006 Associate Discipline Conference form indicating the reasons for her termination: (1) May 19 and 21, 2005; (2) July 31, 2005; (3) February 26, 2006; (4) March 21 and 22, 2006; (5) April 8, 2006; (6) May 1, 2006; and (7) May 4, 2006. Relator argues that she presented sufficient medical evidence concerning the absences on February 26, March 21 and 22, and April 8, 2006. Relator asserts that, pursuant to her employer's policy, those dates should be removed. First, with regard to the February 26, 2006 absence, relator contends that Dr. Ball's progress note dated February 27, 2006 qualifies as a doctor's excuse for her absence the day before and, as such, the employer's HR department should have corrected that date and removed it from her record. For the reasons that follow, this magistrate disagrees.
 {¶ 42} Dr. Ball's progress note from February 27, 2006 indicates that it was relator's initial visit with him for this injury. On that form, Dr. Ball listed his physical findings upon examination, noted his diagnoses and treatment plan, and indicated that relator could return to work on that same day, February 27, 2006, with restrictions including that she lift no more than 20 pounds and very limited bending/twisting. Although *Page 15 
Dr. Ball did note on the form that relator had missed work on February 26, 2006, the magistrate finds that nothing on this form indicates that Dr. Ball was of the opinion that relator had been unable to perform her regular job duties the day before. As such, the magistrate disagrees with relator's argument and finds that the commission did not abuse its discretion when, in reviewing these dates, the commission did not find that February 26, 2006 was an excused absence.
 {¶ 43} However, with regards to the next two occurrences, March 21 and 22, and April 8, 2006, the magistrate finds that relator is correct — these dates should have been excluded as relator presented evidence of a medical excuse for those absences. First, with regard to March 21 and 22, 2006, the record includes the emergency room report from Mount Carmel dated March 21, 2006. On that document, it is noted that relator experienced an exacerbation of her chronic back pain, was sent home and given a work excuse for two days. As such, relator is correct, this absence should have been considered excused. Furthermore, with regard to the April 8, 2006 date, the magistrate specifically notes that, by order dated May 10, 2006, the commission awarded relator TTD compensation for that date. Specifically, the commission awarded TTD compensation for the closed period of March 23 through April 10, 2006. As such, this date should have been removed as well.
 {¶ 44} However, after excluding those dates, the employer's records indicate that relator did indeed have five unscheduled absences: (1) May 19 and 21, 2005; (2) July 31, 2005; (3) February 26, 2006; (4) May 1, 2006; and (5) May 4, 2006. The employer met its burden underLouisiana-Pacific. As such, the magistrate finds that the commission did *Page 16 
not abuse its discretion in finding that the employer presented enough evidence to support a finding of voluntary abandonment.
 {¶ 45} Relator also contends the commission abused its discretion by not addressing the issue of pretext. Relator contends that she was fired, not because of her unscheduled absences, but because she sustained a work-related injury and the employer did not want to pay her compensation. For the reasons that follow, the magistrate rejects this argument.
 {¶ 46} Upon review of the stipulated evidence in the present case, the magistrate finds that there is no evidence that relator made this argument before the commission until her appeal from the SHO's order. Arguably, the evidence here may be interpreted to suggest pretext, as relator's employer actually listed seven unscheduled absences instead of five; however, relator did not argue this issue before the commission, and the magistrate cannot find an abuse of discretion in the commission's not considering an argument which was not presented to it. See State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 47} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her request for TTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1